# In the United States Court of Federal Claims

| | |
|---|---|
| MICHAEL J. FORBES, *pro se.* )<br>  )<br>  *Plaintiff*, )<br>  )<br>  v. )<br>  )<br>THE UNITED STATES )<br>  )<br>  *Defendant.* ) | No. 1:2024-cv-01953<br><br>AMENDED COMPLAINT |

This 9th day of December, 2024

## JURISDICTION AND VENUE

1. The basis for this Court's jurisdiction is founded on the Privacy Act of 1974, 5 USC § 552a, (e)(3), (e)(5), (e)(10), (g)(1)(C) and (D), (g)(4), and (g)(5), as a cause of action, *see Kassel v. US VETERANS' ADMIN., 709 F. Supp. 1194 (D.N.H. 1989)*, and the Department of Defense Privacy Program, *see DOD 5400.11-R, C10.2 and 3*, as well as adjudication of the associated retaliatory investigation resulting in the Plaintiff's separation from service, which resulted in loss of, an earned promotion sequence number, contracted pay, and retirement benefits, that are the, effects of retaliation under the Military Whistleblowers Protection Act (MWPA) of 1988 and, damages under the Privacy Act, *see MWPA, 10 USC § 1034, and 5 USC § 552a*.

2. Additional basis for the US Court of Federal Claims jurisdiction and venue is found under the Tucker Act, 28 USC § 1491, which covers "any claim against the United States founded … upon… any Act of Congress," with the courts finding that that veteran or service member claims for back pay are within the Tucker Act's ambit, *see e.g., Martinez v. United States, 333 F.3d 1295, 1303 and Reaves v. United States, 14-09C (Fed. Cl. 2016)*. Moreover, the Plaintiff's Privacy Act, (g)(1)(C) and (D) relief requested herein for damages claimed under the Privacy Act (g)(4) and (g)(5) provisions, prior to and after December 1, 2024, exceeds $10,000, which gives the Claims Court exclusive jurisdiction, *see Randall v. United States, 95 F.3d 339, 347 (4th Circuit 1996), and; 28 USC § 1491*.

## STATEMENT OF FACTS

3. Prior to joining the Army at the age of 38, Plaintiff, a recently separated from Active Duty Sergeant First Class, served the public as a 14-year licensed Financial Professional with an unblemished record.

1

4. Plaintiff is a 17 year, 9 month and 19 day veteran Sergeant First Class, also, with an unblemished record of service in the United States Army, prior to the events in this Complaint.

5. Plaintiff has deployed 5 times totaling 33 months and was most recently stationed in Fayetteville, NC.

6. Plaintiff has a Masters degree in Business Administration (University of Pittsburgh) and a Bachelor of Science in Accounting (Pennsylvania State University).

7. Plaintiff has maintained a Top Secret security clearance and has been a trusted Personnel Security Manager for multiple Commanders over the course of his entire Army career.

8. On November 29, 2022, the Plaintiff's Brigade Commander ordered, and the Command Operational Psychologist supported/directed, the Plaintiff to become a client of an online corporate surrogate (Corestrengths), for the collection of personally-identifiable Plaintiff information; information that, if provided, would be owned by the corporate surrogate and be provided back to the Brigade Commander and Command Operational Psychologist via the coerced Plaintiff's participation in the surrogate's online tool entitled Strength Deployment Inventory (SDI), *see Exhibits 1(Brigade Commander's Brunson's Order), 2 (Civilian directive of Racaza as Corestrengths Facilitator), and 3 (Email from Field Grade Officer Racaza)*.

9. On November 30, 2022, the Plaintiff began a series of protected communications with an Inspector General (IG) for assistance, regarding the Privacy Act violations, *see Exhibit 4*.

10. Plaintiff did not disrespect the Command Operational Psychologist, who has not, up until she left the unit, provided any of the Plaintiff-requested, informed-consent information, required by statute, in any statutory-compliant form (which "departs substantially from the required standards appropriate to that officer's rank or position)," *see Manual for Courts Martial (2024), Article 89, "Special defense-unprotected victim."* Nor, to date, has the Army provided this information.

11. On December 12, 2022, the Plaintiff was assaulted by a Command Sergeant Major during the morning Battalion formation.

12. On December 19, 2022, the Plaintiff was removed by the Brigade Commander from his position as Non-Commissioned Officer in Charge of the Personnel Security Office and multiple other appointed duties.

13. On January 12, 2023, the Plaintiff was unwittingly named as a suspect in an internal investigation due, initially, to a complaint levied by the Command Operational Psychologist that centered on his request for informed consent information on November 30, 2022; a week later, on January 18, 2023 and during the same open investigation, the same Command

Operational Psychologist complainant authorized an after-hours emergency Command-Directed Behavioral Health Evaluation of the Plaintiff.

14. After two personnel actions documents were presented to the Plaintiff (which resulted from the aforementioned investigation), the issuance of a General Officer Memorandum of Reprimand, dated May 30, 2023, and the imposition of a Relief for Cause Non-Commissioned Officer Evaluation Report, dated July 12, 2023, the Plaintiff was identified for consideration by the Qualitative Management Program (QMP). Both documents cited the investigated 'disrespect of an Officer' on November 30, 2022.

15. Plaintiff has expressed no view or behavior that could be reasonably interpreted as disrespectful, counterproductive, racist, trans-phobic, or involved in thievery or blackmail, as allegations in the internal investigation purported. The Plaintiff simply followed regulations and asked appropriate questions. The Plaintiff has asserted and expressed his innocence continuously and repeatedly since being removed from his position on December 19, 2022.

16. By two memoranda, both dated May 29, 2024, the Army expressed its decision of "Denial of Continued Active Duty Service under the Qualitative Management Program (QMP)," which is an involuntary separation; the letters purported to state, but stated no reasons for separation, except its decision.

17. Plaintiff and his family have exhausted all of their savings (and have gone into debt) in an effort to gain acknowledgment of the blatant Privacy Act violations that caused the controversy and to remediate the harms caused to the Plaintiff by the defendant.

18. Consistently, the Plaintiff has been harmed due to Defendant's negligence (failure to follow their own regulations). Most recently, the Plaintiff was denied regulation-required transition stages to help secure future employment. This compounded the damages caused by the Defendant's wrongful involuntary separation of the Plaintiff.

## CLAIMS

19. On November 29, 2022, the Army unlawfully ordered the Plaintiff to become a client of a corporate surrogate (via performing the aforementioned SDI), for the collection and receipt of the Plaintiff's personally-identifiable information and beliefs without established administrative safeguards to protect against any anticipated threats or hazards to the data's security or integrity, which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained in violation of Executive Orders No. M-10-22 (2010) and M-10-23 (2010), and the Privacy Act, *see 5 USC § 552a, (e)(2), and (e)(10)*.

20. The Army, through multiple Officers, when presented with an Inspector General-recommended request (to the Plaintiff, on November 30, 2022, during a protected communication) for the "statutory support and scope" (statutory informed-consent information requirements) of an ordered corporate (third-party) behavioral health assessment entitled "Strengths Deployment Inventory (SDI)," knowingly, willfully, and deliberately retaliated via a complaint and an associated launched and corrupted investigation (not

3

collecting information to the greatest extent practicable) regarding the Plaintiff (*see Exhibit 5*) in violation of retaliation under the MWPA, and the Privacy Act; *see 10 USC § 1034, and 5 USC § 552a, (e)(2), (e)(3)(A-D), and (e)(5), also see Kassel (1989).* The SDI task was not required to be accomplished by the Plaintiff due to statute or by executive order of the President, and hence not incident to the Plaintiff's service requirement and this status was corroborated by the Inspector General's Office, *see 5 USC § 552a (e)(1) and (e)(7).*

21. The Army, upon ordering the Plaintiff's involvement in the purchased corporate (third-party) behavioral health assessment (SDI) that directly promotes Diversity, Equity and Inclusion doctrine, knowingly, willfully, and deliberately failed to ask the Plaintiff for the information it wanted, and willfully and negligently denied the Plaintiff's right to formally express his denial of consent, and hence, to retain a copy of this denial on a statute-compliant consent form, in violation of multiple laws and regulations: *the Privacy Act (e)(3)(A-D)*; *the MWPA, 10 USC § 1034; and Defense Regulation "Protection of Human Subjects in Medical Experimentations," 32 CFR Part 219.116(a)(b) and (c); and HHS Regulation "The Common Rule," 45 CFR § 46 Subpart A*.

22. The Army's order conflicted with the Plaintiff's statutory right to express his choice to consent or not, a violation of the 1st Amendment, the 5th Amendment's due process clause, and the Privacy Act; *see 5 USC § 552a (e)(3)(A-D).*

23. On November 30, 2022, the Plaintiff was harmed by the Inspector General (IG) when it failed to address the Plaintiff's Call-in Inspector General Assistance Request (IGAR) in violation of the Inspector General Activities and Procedures regulation; *see Army Regulation 20-1,Ch. 6-1, f., and also see The US Army Inspector General School's training manual, doctrine entitled "The Assistance and Investigations Guide," Section 2-2-2.*

24. On December 2, 2022, the Army ordered a second, and separate, third-party Behavioral Health Evaluation that was embedded in a published, unlawful and falsified order for the Plaintiff to participate in the personally-identifiable Human Protection and Wellness program that has direct research ties to Diversity, Equity and Inclusion implementation and is linked to the search for prohibited extremist behaviors in the military. This information (a baseline holistic health survey) also was ordered without the requisite safeguards to the Plaintiff's right to expressly document his informed consent or non-consent prior to the Agency asking for it, *see 5 USC § 552a (e)(3)(A-D) and (e)(10).*

25. On February 9, 2023, the Plaintiff was harmed when he became a suspect in a second-referred investigation stemming from the Plaintiff's Inspector General Complaint, a violation of the Military Whistleblower Protection Act; *see MWPA, 10 USC § 1034*

26. Plaintiff is also being irreparably harmed by the recent Affirmative Defense added to the Military Whistleblowers Protection Act (MWPA) and made effective on December 23, 2016; *see MWPA, 10 USC § 1034, and also National Defense Authorization Act for (NDAA), Fiscal Year 2017*. (See further discussion below under "Constitutional Claims")

27. The Army failed to act when presented with a request for a stay of separation due to unit Commander knowingly, willfully, and deliberately denying the Plaintiff's redress request for the unit Commanders negligence to fulfill their responsibilities "I[n]A[ccordance]W[ith] public Law 101-510, Section 1144" of ensuring Soldiers report to "a mandatory Pre[-]separation Briefing 120-180 days prior to separation with the Soldier for Life," as per Army Regulation 635-8 (Ch. 4-3, b.), *see Exhibit 6 (redress denial), 7 (Article 138 denial), and 8 (separation orders)*.

## CONSTITUTIONAL CLAIMS

28. First Amendment overbreadth doctrine prohibits laws or regulations that regulate speech if "a substantial number of [their] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," *see United States v. Stevens, 559 U.S. 460, 473 (2010), citing Washington State Grange v. Washington State Republican Party 552 US 442 (2007).*

29. The Affirmative Defense added to the MWPA *(see 10 USC § 1034, (b)(2)(C))* is facially overbroad as it sweeps in the authority for any Commander to investigate limitless amount of "allegations of collateral misconduct" on any Soldier that voices any concern about an unlawful, or unsafe, action that is protected by the MWPA, and hence the First Amendment. For example, the added clause of the Affirmative Defense allows for the Commander to investigate any conceivable "matter unrelated to the protected communication," as long as they get approval from one of three sources, which could promulgate an "under the microscope" understanding amongst service members in our military. This could prohibit protected communication activity such as questioning the lawfulness of an order, reporting wrongdoing, or merely requesting that Inspector General assist and intervene. This also, could prohibit expressions in open dialogue such as stating that "maybe the Inspector General can help or let me call the Judge Advocate General for the answer."

30. The added Affirmative Defense in the MWPA is overbroad on its face because its unconstitutional applications are substantial in relation to its legitimate applications as they chill lawful, expected, and sought after communications. In fact, it would be difficult to find any Agency in the US Government that does not have an active, publicized, and promoted Whistleblower Protection Program or Policy.

31. Plaintiff is being irreparably harmed by the Affirmative Defense added to the MWPA in 2016, *see MWPA, 10 § USC 1034*.

32. The failure of the command to provide the required minimum 120-days of pre-separation preparation, as per Army Regulation 635-8, also is a significant violation of the Fifth Amendment's Due Process Clause.

33. Plaintiff has no other adequate legal remedy than declaratory and injunctive relief by this Court from the retaliatory investigation that led to the Plaintiff's separation, *see MWPA, 10 USC § 1034, the Privacy Act 5 USC § 552a, (e)(5), and Kassel 709 F. Supp. at 1205 (1989)*.

CONCLUSION

34. For causes listed above, the Plaintiff requests:

35. an immediate reinstatement and stay of separation until such time as unit Commanders remediate their failures to perform their duty to provide the minimum required 120 days of separation preparation (as per Army Regulation 635-8) associated to the Plaintiff's administrative separation scheduled for December 1, 2024, or in the alternative until this case is adjudicated, *see* Tucker Act, *28 USC § 1491, and also see Reaves (2016)*;

36. an award for the actual incurred legal fees of approximately $13,000, to date, spent in seeking an administrative remedy through the US Army due to the violation of the Privacy Act cause of action, *see Privacy Act, 5 USC § 552a(g)(4)(B)*;

37. a declaration of the equitable relief from all retaliatory negative (unnecessary and irrelevant) personnel actions on the Plaintiff by having them expunged; a reinstatement of the Plaintiff's promotion at the time and level of his sequence number earned on January 19, 2023, would have permitted; the correction of service records to reflect Plaintiff's actual dutiful and unblemished service, *see MWPA, 10 USC § 1034 and 5 USC § 552a, (e)(1) and (e)(5)*;

38. reinstatement in the Army to serve his current indefinite service contract, or the award of retirement benefits as if he honorably served his contract as a Master Sergeant, in the event a reinstatement and stay does not occur, *see Tucker Act, 28 USC § 1491;*

39. the award of more than $142,350 of regular pay to fulfill the Plaintiff's contract (of which, a total of $2,145 back pay has been realized for the 8 days from the Plaintiff's separation to the date of this amendment), $4,572 in recouped bonus from the Plaintiff's unfulfilled, indefinite, service contract, and lost wages from promotion of approximately $4,944 to date, *see Privacy Act, 5 USC § 552a, (g)(4)(A); see Exhibit 9 (indefinite reenlistment contract)*;

40. a declaration to allow the Plaintiff equitable relief from The Department of the Army and the Department of Defense who separated the Plaintiff 2 months and 11 days prior to the enlisted retention authority, based on 10 USC § 1176 *(see Exhibit 10)*, permitting the plaintiff to honorably retire as a Master Sergeant with his unblemished record of service as intended;

*41.* a declaration that the added (2016) Affirmative Defense clause to the Military Whistleblower Protection Act on its face and as applied in the this case, undermines protections of the Act, *see 10 USC § 1034, (b)(2)(C)*

42. any and all other such relief that the Court deems just and proper.

| December 9, 2024 | _(signature)_ |
|---|---|
| Date | Signature of Plaintiff |

614 Northampton Road　　　　　　　　　　　　　　　　　　　　　　　　Cell: (910) 336-5966
Fayetteville, NC 28303　　　　　　　　　　　　　　　　　　　　　Email: forbes2024cfc@yahoo.com